UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**FRANKFORT**

| | | |
|---|---|---|
| TINA MICHELLE BLACK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 3:05-18-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| FRANKLIN COUNTY, KENTUCKY; | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

** ** ** ** ** ** ** ** **

This matter is before the Court on several motions.  First, Defendants filed a motion to dismiss Plaintiffs' original complaint [Record No. 12].  Plaintiffs filed a response [Record No. 20] to which Defendants replied [Record No. 22].  After Plaintiffs filed an amended complaint, Defendants filed a motion to dismiss the Plaintiffs' amended complaint [Record No. 21].  Defendants also sought leave, which the Court granted, to file a supplemental motion to dismiss the Plaintiffs' original complaint and amended complaint [Record No. 30].  Plaintiffs filed a response to the motion to dismiss the amended complaint and the motion to dismiss the supplemental complaint [Record No. 32] to which Defendants replied [Record No. 34].  This matter is now ripe for review.

**FACTUAL BACKGROUND**

All of the claims in the original complaint and amended complaint arise from alleged strip searches conducted upon Plaintiffs at the Franklin County Correctional Complex ("FCCC").

Generally, the original and amended complaints allege that personnel at the FCCC strip searched Plaintiffs after Plaintiffs were arrested for various minor, nonviolent offenses. The specific nature of each Plaintiffs' claims will be discussed where relevant in the Discussion section of this Memorandum Opinion and Order.

### PROCEDURAL BACKGROUND

Plaintiffs filed the original complaint in this case on March 28, 2005, alleging constitutional violations pursuant to 42 U.S.C. § 1983 on behalf of three Plaintiffs. On April 6, 2005, Plaintiffs filed a motion to certify class, which Plaintiffs thereafter withdrew via an Agreed Order with Defendants. On May 9, 2005, Plaintiffs then filed an Amended Complaint, adding 24 new Plaintiffs. Although the *specific* nature of Plaintiffs' individual claims varies, all of the claims generally assert that Plaintiffs were strip searched in contravention of their constitutional rights under the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution.

Defendants thereafter filed a motion to dismiss Plaintiffs' original complaint on May 9, 2005. After seeking an extension of time to file a responsive pleading to Plaintiffs' amended complaint, Defendants also sought dismissal of Plaintiffs' amended complaint via a second motion to dismiss filed on June 8, 2005. On June 21, 2005, Defendants filed a motion for leave to file a supplemental motion to dismiss followed by an Agreed Order granting

2

such motion.  The Court entered the Agreed Order, thereby granting Defendants' motion for leave to file a supplemental motion to dismiss.

Typically, when a "plaintiff files [an] amended complaint, [the] new complaint supersedes all previous complaints and controls [the] case from that point forward." *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 (6th Cir. 2000).  In this case, however, Plaintiffs' amended complaint incorporated by reference the original complaint and merely added claims asserted by different Plaintiffs arising out of similar factual scenarios. Additionally, Defendants filed separate motions to dismiss with respect to both of Plaintiffs' complaints.  As such, one motion to dismiss does not supersede the other and, instead, the Court must address the merits of both motions to dismiss, and the supplemental motion to dismiss.

### STANDARD OF REVIEW

Defendants labeled the instant motion a motion to dismiss for failure to state a claim upon which relief can be granted under 12(b)(6).  A 12(b)(6) motion tests the sufficiency of the pleadings and is "not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (2005).  A district court considering a motion to dismiss must "assume that all allegations are true and dismiss the claim 'only if it is clear that no relief could be granted under any set of facts that could

3

be proved consistent with the allegations.'" *Id.* at 959 (quoting *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996)).  At the same time, though liberal, "'this standard of review does require more than the bare assertion of legal conclusions.'" *Id.* (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109-10 (6th Cir. 1995)).

On the other hand, Fed. R. Civ. P. 12(b) gives district courts the power to convert a motion to dismiss into one for summary judgment "where the court is presented with materials outside the pleadings." *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000).  The Rule states, "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b).

However, in construing the language from the Rule mandating that a court wishing to convert the motion must "give all parties . . . 'reasonable opportunity to present all material made pertinent to' the issue," the Sixth Circuit has stated that "it is 'serious error' for a district court to convert the motion *sua sponte* to a summary judgment motion without notice to parties and

4

without further discovery." *Ball v. Union Carbide Corp.*, 385 F.3d
713, 719 (6th Cir. 2004)(quoting Fed. R. Civ. P. 12(b); *Helwig v.
Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001)).  In fact, only
"unequivocal notice" will satisfy the notice requirement. *Helwig*,
251 F.3d at 552.  Additionally, the Sixth Circuit has recognized a
district court's authority to, in lieu of providing notice to the
parties and converting the motion into one for summary judgment,
disregard the extrinsic evidence submitted and examine only the
sufficiency of the complaint. *See Greenberg v. Life Ins. Co. of
Virginia*, 177 F.3d 507, 514 (6th Cir. 1999)("On the other hand,
Life of Virginia's attachment of the illustration . . . is a
'matter [] outside the pleadings.'  But the district court did not
consider the illustration in making its Rule 12(b)(6) decision to
dismiss the complaint, so *no harm was done*." (emphasis added)).

## DISCUSSION

## A.   Consideration of Matters Outside the Pleadings

At the outset, the Court must address the fact that Defendants
submitted a significant amount of evidence outside the pleadings in
support of their motion to dismiss.  Although the Court recognizes
its authority to convert a motion to dismiss into one for summary
judgment after providing the requisite notice to the parties, the
Court finds that conversion in this case would be entirely
inappropriate.  First, rather than *merely* refuting the evidence
submitted by Defendants in support of their motion, Plaintiffs

5

explicitly oppose the Court treating the motion as one for summary judgment absent additional discovery.  More important, however, is the Plaintiffs' reason for so objecting — no discovery has been conducted in this matter.  In the Court's view, it would be not only premature but unreasonable to require Plaintiffs to, prior to having conducted any discovery, fully produce evidence to refute that presented by Defendants.  As such, the Court declines to treat the instant motion as one for summary judgment and, rather, will disregard the extrinsic evidence submitted and examine only the sufficiency of the complaint.  *Id.*[1]

**B.    FCCC as a "Sueable" Entity**

Plaintiffs original complaint and amended complaint assert claims against the FCCC as a separate entity.  However, this Court has recognized that the FCCC "is not a legal entity capable of being sued."  *Smith v. Franklin County*, 227 F. Supp. 2d 667, 674-75

---

[1] The Court emphasizes that it recognizes its authority to merely give the parties notice of its intention to treat the instant motion as one for summary judgment, allow for a determined discovery period with respect to the issues raised in the motion, and then address the merits of the motion.  However, Defendants rely on a **substantial** amount of evidence to support many of their arguments, which would result in the Court having to reserve ruling on **numerous** claims — the details of which the Court addresses later in this Memorandum Opinion and Order.  In light of this and because no discovery has yet been conducted, in the Court's view, it would be more efficient and more in keeping with the Federal Rules of Civil Procedure to treat this motion as a facial attack on Plaintiff's claims; deny the motion to the extent that it necessarily relies on extrinsic evidence; and allow Defendants the opportunity, after some time is allowed for discovery, to re-raise any of their arguments that necessarily relied on evidence outside the pleadings.

(E.D. Ky. 2002). Moreover, Plaintiffs concede in response to the instant motions that the FCCC is not a legal entity that is subject to suit. (Pls.' Resp. to Defs' Mot. to Dismiss First Am. Compl. at 13.) As such, the FCCC must be dismissed as a Defendant to this action.

### C.   Statute of Limitations

The parties agree that the statute of limitations applicable to this cause of action is a one-year statute of limitations. *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990)("[W]e conclude that section 1983 actions in Kentucky are limited by the one-year statute of limitations."). Thus, Plaintiffs must have filed their claims within one year of the alleged unconstitutional conduct. However, the Court rejects Plaintiffs' argument that the claims in the amended complaint "relate back" to the filing of the first complaint. The law is clear that a complaint that adds new parties to the action does not relate back to the filing of the original complaint. *See Bishop v. Atmos Energy Corp.*, 161 F.R.D. 339, 341 (W.D. Ky. 1995)(citing *Leitch v. Lievense Ins. Agency, Inc.* (*In re Kent Holland Die Casting & Plating, Inc.)*, 928 F.2d 1448, 1449 (6th Cir. 1991) & *Smart v. Ellis Trucking Co.*, 580 F.2d 215, 218 (6th Cir. 1978)). Therefore, the claims in the complaint must have arisen on or after May 9, 2004, and the claims in the amended complaint must have arisen on or after March 28, 2004 — one year before the date of the

7

filing of each complaint.

All of the claims in the original complaint arose within one year of the filing of the complaint. However, with respect to the amended complaint, the claims of the following Plaintiffs arose before May 9, 2004, and are subject to dismissal: Rebecca Hagan ("Hagan"), Penny Tillett ("Tillett"), Sandra McClease ("S. McClease"), Angela Lear ("Lear"), Jimmy Hammonds ("Hammonds"), and Natasha Marie Hunter ("Hunter"). Additionally, Patricia Tipton's ("Tipton") claims arose out of two different sets of facts, one of which arose prior to May 9, 2004. Thus, to the extent that Tipton's claims arise out of facts occurring in 2001, such claims are time barred.

Defendants also argue that Tommy Cummins's ("Cummins") claims arose on May 6, 2004, and, therefore, were not timely filed. In so arguing, Defendants rely on extrinsic evidence and not on the facts as alleged in the complaint. The amended complaint alleges only that Cummins was strip searched in May of 2004. Defendants note in their reply that Cummins did not challenge the fact that his claim arose on May 6, 2004. However, as the Court explained previously, it will not at this point in the proceedings, absent any discovery, require Plaintiffs to refute this fact in response to a *motion to dismiss*. On the other hand, nothing shall preclude Defendants from re-raising this argument after Plaintiff has had the opportunity to conduct some discovery on this and other issues raised by the

8

instant motions.

D.   **Prison Litigation Reform Act**

The Prison Litigation Reform Act ("PLRA") states, "No action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a). Additionally, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."   *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Defendants first ask that the Court revisit its prior holding from *Smith v. Franklin County*, 227 F. Supp. 2d 667 (2002), that the PLRA's exhaustion requirements do not apply to *former* prisoners. *Id.* at 676.   Specifically, Defendants cite several opinions from other districts wherein courts have taken the opposite position of this Court.   *See, e.g.*, *Morgan v. Maricopa County*, 259 F. Supp. 2d 985, 991-92 (D. Ariz. 2003); *Zehner v. Trigg*, 952 F. Supp. 1318, 1327 (S.D. Ind. 1997), *aff'd*, 133 F.3d 459 (7th Cir. 1997); *Kerr v. Puckett*, 967 F. Supp. 354, 361-62 (E.D. Wis. 1997).   The Court recognizes that neither the Sixth Circuit nor the United States Supreme Court have addressed this issue.   Nonetheless, consideration of both positions on this issue leads the Court to

9

conclude that the *Smith* reasoning and holding remain sound and, thus, controlling in this case.  In fact, one court that recently addressed this issue following thorough consideration of both sides of the argument noted that the position posited by Defendants — that the PLRA applies to both current *and former* prisoners — "is decidedly the minority view."  *Thomas v. Baca*, No. CV 04-008448, 2005 WL 697986, at * (C.D. Cal. Mar. 23, 2005)(citing *Smith*, 227 F. Supp. 2d 667).  Thus, the Court rejects Defendants' request that the Court overturn its holding from *Smith*.

Along a similar vein, Defendants argue that, regardless of how the Court resolves the issue of application of the PLRA's exhaustion requirements to former prisoners, all of Plaintiffs' claims are barred by a different provision of the PLRA.  The relevant provision states, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody *without a prior showing of physical injury*."  § 1997e(e)(emphasis added).

The Court notes that the cases on which Defendants rely for this argument are essentially the same cases on which Defendants relied for their argument that § 1997e(a) applies to former prisoners — cases with holdings that this Court declined to adopt. Moreover, although the precise issue before this Court in *Smith* was whether the exhaustion requirements in § 1997e(a) applied to former

10

prisoners, in concluding that they did not, the Court relied in great part on the definition of "prisoners" contained in § 1997e itself.  The PLRA defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  § 1997e(h). Subsection (e) precludes claims by "prisoners" absent allegations of physical injury.

In fact, rather than specifying a particular provision of § 1997e that applied to current prisoners only, the Court in *Smith* opined, "The plain language of the **PLRA** suggests that former prisoners do not fall within its scope as §§ 1997e(a), *(e)*, and (h) speak of those prisoners "confined in a jail, prison or other correctional facility" or "incarcerated or detained," a status to be determined at the time the suit is "brought."  *Smith*, 227 F. Supp. 2d at 675 (emphasis added).  In light of the *Smith* opinion, which the Court finds persuasive, the Court finds that, like § 1997e(a), § 1997e(e) only applies to individuals who were prisoners at the time they brought suit.

On the other hand, Defendants note that three of the Plaintiffs — Jonathan Cox ("Cox"), Tammy Laurine Cooper ("Cooper"), and Tipton — were in fact incarcerated at the time that the amended complaint was filed, albeit on different charges than those from

11

which the allegations of the amended complaint arose.  Defendants argue that the PLRA exhaustion requirements apply to the claims of such Plaintiffs because they were "prisoners" at the time that they filed the amended complaint.  Noting that the Court is aware of no controlling authority on this issue, the Court agrees.  Nothing in the plain language of the PLRA exempts a prisoner who is detained on *different charges than those that yielded the imprisonment from which the claims arose* from the exhaustion requirements or from the requirement that the prisoner allege more than just emotional injury.  *See* §§ 1997e(a), (e) & (h).

At the same time, with respect to Plaintiffs Cox and Cooper, it is not clear from the *face of the complaint* that they were prisoners at the time the complaint was filed.  As such, on a 12(b)(6) motion, it is not appropriate to dismiss their claims for failure to exhaust or for failure to allege physical injury. However, nothing in the Court's decision on this issue shall preclude Defendants from reasserting the non-exhaustion defense or the physical injury defense in a motion for summary judgment after Plaintiffs have had a full and fair opportunity to conduct discovery in this matter sufficient to respond to such a motion.

Plaintiff Tipton, on the other hand, acknowledges in the complaint that she was a prisoner at the time of the filing of the complaint and, nevertheless, fails to allege any facts regarding exhaustion of remedies and fails to allege any physical injury

12

resulting from the alleged strip search.  Although claims dismissed for failure to exhaust are to be dismissed without prejudice, *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000), that is not the case with respect to claims brought by prisoners that fail to allege physical injury.  As a result, Plaintiff Tipton's remaining claims against Defendants, arising out of the imprisonment that resulted from her misdemeanor sentence, must be dismissed with prejudice.[2]

**E.   Qualified Immunity**

In the qualified immunity analysis, the "threshold inquiry" is whether the allegations of the complaint, if true, establish a constitutional violation."  *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Skousen v. Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002).  Despite an alleged constitutional violation, defendants

---

[2]In response to Defendants' argument on the physical injury requirement, Plaintiffs merely state:

> It is clear beyond any doubt that the illegal strip searches employed by Defendants in these cases violated the Plaintiffs' constitutional rights.  The allegation that this clearly unconstitutional conduct also caused embarrassment, humiliation and emotional distress does not eliminate the cause of action for Defendants' conduct.  Defendants' conduct was actionable even without the allegation of embarrassment, humiliation and emotional distress.

(Pls.' Resp. to Defs' Mot. to Dismiss First Am. Compl. at 15.) However, Plaintiffs offer no authority whatsoever for this seemingly conclusory argument that the physical injury requirement in § 1997e(e) does not apply in *this* case.

"may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 739 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

For the right to be "clearly established," it "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," or in other words, "the unlawfulness must be apparent" in light of "pre-existing law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In recent months, the United States Supreme Court refined the "clearly established" prong of the qualified immunity analysis. *See Brosseau v. Haugen*, --- U.S. ---, 125 S. Ct. 596, 598-600 (2004); *see also Lyons v. City of Xenia*, --- F.3d ---, No. 03-3282, slip op. at 4-5 (6th Cir. Aug. 4, 2005).

Specifically, "[i]n 'an obvious case,' the Court acknowledged, the 'general'" standards for the constitutional right at issue "'can "clearly establish" the answer, even without a body of relevant case law." *Lyons*, slip op. at 4 (quoting *Brosseau*, 125 S. Ct. at 599). Where it is not "obvious," however, that the right is clearly established, a reviewing court must "turn to ask whether, at the time of [the defendant's] actions, it was '"'"clearly established"'"' in [a] more particularized sense that [the defendant] was violating [the plaintiff's constitutional] right."

14

*Brosseau*, 125 S. Ct. at 599 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  According to *Brosseau* and *Lyons*, this is established only where "the violation is shown by the failure to adhere to "a 'particularized' body of precedent that 'squarely govern[s] the case.'"  *Lyons*, slip op. at 10 (quoting *Brosseau*, 125 S. Ct. at 599-600).

   1.  *Equal Protection Claims*

   Regarding the threshold question of whether Plaintiffs have alleged equal protection violations, *Hope*, 536 U.S. at 736, the Court finds that, with respect to all but one Plaintiff, they have not.  Defendants concede that Plaintiff Tina Michelle Black ("Black") has alleged an equal protection violation,[3] by alleging that males at FCCC were not strip searched upon return from work release and that women were.  However, Defendants are correct that none of the other Plaintiffs have brought forth any allegations that they were treated any differently than anyone else.  Thus, the Court concludes that only Plaintiff Black's equal protection claim survives the "threshold inquiry."  *Id.*

   Moreover, the Court notes that Defendants have not posited any arguments that the right asserted in Plaintiff Black's equal

---

[3]Defendants correctly point out that they have not conceded that they *actually violated* Plaintiff Black's equal protection right.  The only thing that Defendants have conceded is that Black's claim, *if true*, constitutes an equal protection claim. Thus, at the motion to dismiss stage, such claim is not subject to dismissal.

protection claims was not "clearly established."  In fact,
Defendants have conceded that Black's equal protection claims may
proceed into discovery.  Thus, the Court need not address the issue
of qualified immunity with respect to such claims.

    2.  *Ninth Amendment Claims*

    Consideration of *Brosseau* and *Lyons* yields the conclusion that
all of Plaintiffs' Ninth Amendment claims must be dismissed.
Regardless of whether Plaintiffs have identified a Ninth Amendment
right that Defendants violated, any such right — without a doubt —
is not clearly established.  Plaintiff has not identified, and the
Court is unaware of, any case law arising in a similar factual
context wherein a court found a strip search to have violated a
plaintiff's Ninth Amendment privacy rights.  As such, FCCC
personnel would not have known that what they were doing violated
that right, and Defendants are entitled to qualified immunity with
respect to Plaintiffs' Ninth Amendment claims.[4]

    3.  *Search and Seizure, Due Process, and Cruel and Unusual
        Punishment Claims*

    First, the Court notes that Defendants have not moved for

_____

    [4]In response to Defendants' argument on this issue,
Plaintiff merely states, "The fundamental rights under the
'penumbra doctrine' recognized in Griswold v. Connecticut, 381
U.S. 479 (1965) involves the right to privacy and is clearly
established.  Defendants thus are not entitled to qualified
immunity on the Ninth Amendment claim." (Pls.' Resp. to Defs'
Mot. to Dismiss First Am. Compl. at 13.)  This wholly conclusory
statement hardly establishes that Plaintiffs have alleged Ninth
Amendment violations and certainly fails to show that any such
Ninth Amendment right was "clearly established."

dismissal of the following Plaintiffs' search and seizure, due process, and cruel and unusual punishment claims on qualified immunity grounds — Wendy Hockensmith, James Dion Bixler, and Darren Dean Hockensmith.  Thus, such claims may proceed into discovery.

Defendants next point out that claims of pretrial detainees do not proceed under the same analysis as do claims of inmates, which is correct.  Claims brought by pretrial detainees, in fact, do not fall under the Eighth Amendment at all. *See Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979)("The Court of Appeals properly relied on the Due Process Clause rather than the Eighth Amendment in considering the claims of pretrial detainees.").  Thus, Defendants properly assert that the Eighth Amendment claims of any of the Plaintiffs who were pretrial detainees at the time the claims arose are subject to dismissal.  What Defendants fail to recognize is that it is difficult, if not impossible, in most instances to ascertain merely from the face of the complaint whether the particular Plaintiffs were pretrial detainees or inmates who had already been sentenced at the time the alleged constitutional violations occurred.  Thus, it would be inappropriate for the Court, absent additional discovery, to draw conclusions on this issue at this early stage of the proceedings.

Nonetheless, some of Plaintiffs' claims, as alleged, fail to qualify as constitutional violations and, thus, must be dismissed. First, Plaintiff Black alleges constitutional violations arising

17

out of two different sets of strip searches, one of which occurred "each day after [Black] return[ed] to the jail from work release." (Pls.' Compl. at 5.)  Regardless of how the Court analyzes this claim, the Court finds that the strip searches that occurred after Black returned from work release each day were constitutional.

The Sixth Circuit has explicitly held:

> [W]here pretrial detainees, including those charged with minor, nonviolent offenses, are kept in a detention center's general population prior to arraignment, and are thereafter . . . put in a position where exposure to the *general public presents a very real danger* of contraband being passed to a detainee, a policy of strip searching the detainees upon their return from the courthouse and prior to their being placed back in the general population of the detention center is both justified and reasonable.

*Richerson v. Lexington Fayette Urban County Gov't*, 958 F. Supp. 299, 307 (E.D. Ky. 1996)(emphasis added).  The Court finds little difficulty in concluding that if pretrial detainees may constitutionally be strip searched after returning from an arraignment in which members of the general public could be present, inmates on work release, which is *outside of the prison*, likewise may be strip searched upon return to the prison.  Like detainees transported to court, inmates on work release are potentially exposed to members of the general public such that the prison's interest in preventing contraband or weapons from entering the prison is directly in play.  Thus, Plaintiff Black has failed

18

to allege a search and seizure, due process, or cruel and unusual punishment clause violation arising from having been strip searched following her return from work release.   However, as indicated previously, Plaintiff Black's equal protection claims arising out of the work release strip searches may proceed into discovery.

Similarly, and directly on point with *Richerson* is Plaintiff Deidra Wash's ("Wash") claims.   Wash was strip searched after returning to the jail *from court* following a hearing on her case. The Court finds that *Richerson* is applicable to Plaintiff Wash's claims and that Wash, thus, has failed to allege viable constitutional violations.   Likewise, as one of two sets of strip searches alleged by Plaintiff Cooper, Cooper first alleges that she was strip searched every time she returned to the FCCC following a court hearing.   However, as *Richerson* holds, such searches did not violate Cooper's constitutional rights.[5]

Additionally, the Court finds that Plaintiff Maureen O. Mitchell ("Mitchell") has failed to allege a viable constitutional claim.   After Mitchell was stopped for speeding, she was arrested and charged with driving on a suspended license, possession of a

---

[5]Defendants argue that numerous other Plaintiffs were strip searched only after returning from court and, thus, after having been exposed to the public.   However, other than those Plaintiffs who the Court addressed above, all of Defendants' argument necessarily require the Court to consider evidence outside the pleadings, which the Court declines to do.   Defendants may re-raise these arguments, though, after Plaintiffs have been allowed time to conduct a sufficient amount of discovery to rebut Defendants' arguments.

controlled substance in the first degree, and possession of a controlled substance in the third degree. Mitchell was subsequently taken to the FCCC and was subjected to a strip search. As described below, consideration of the Sixth Circuit's opinion in *Masters v. Crouch*, 872 F.2d 1248 (6th Cir. 1989), leads the Court to conclude that the strip search did not violate Mitchell's constitutional rights.

*Masters* establishes that there is "no authority approving a practice of conducting a strip search of a person arrested for a simple traffic violation in the absence of at least reasonable suspicion that the person might be carrying a weapon, illegal drugs, or other contraband." *Id.* at 1253. The *Masters* court went on to hold that "authorities may not strip search persons arrested for *traffic violations and nonviolent minor offenses* solely because such persons ultimately will intermingle with the general population at a jail when there were no circumstances to support a reasonable belief that the detainee will carry weapons or other contraband into the jail." *Id.* at 1255 (emphasis added).

Despite Plaintiff Mitchell's arguments to the contrary, *Masters* precludes Mitchell's claim. Even if the Court assumes that the crimes with which Mitchell were charged were nonviolent minor offenses, Mitchell was charged with drug crimes and, therefore, is not entitled to the protection of the *Masters* holding. In this Court's view, it is axiomatic that in such a case, jail personnel

would have a "reasonable belief that [Mitchell] will carry . . . contraband into the jail." *Id.*[6] Accordingly, Plaintiff has failed to allege a constitutional violation arising from having been strip searched after being arrested on drug charges and transported to the FCCC.[7]

Finally, the Court finds that Defendants are entitled to dismissal of Plaintiff Karen Gamble's ("Gamble") and Plaintiff Davanika Barber's ("Barber") claims against them. First, any attempt by Plaintiffs to argue that Gamble's claim falls under the protection of *Masters* is entirely without merit. Gamble was only strip searched after reporting to FCCC to serve the sentence imposed upon her in accordance with a plea bargain between Gamble and the Government. Likewise, Barber alleges that she was strip searched upon reporting to the FCCC on weekends to serve her

---

[6]Defendant also argues that Plaintiff Brittney Creech ("Creech") was charged with drug crimes and that her claim must be dismissed. However, in so arguing, Defendants necessarily rely on evidence outside the pleadings, which this Court disregards for purposes of this motion. Therefore, the Court will not at this point dismiss Creech's claims on those grounds.

[7]Plaintiff cites several decisions from other districts wherein courts held strip searches to be unconstitutional despite the plaintiff having been brought in on drug charges. However, the Court is of the opinion that cases from other circuits, i.e., non-controlling case law, would not put Defendants on notice that the strip search at issue violated Plaintiff Mitchell's constitutional rights. Thus, even if the Court agreed with the cases to which Plaintiff Mitchell cites and adopted their holdings, which the Court does not, such cases would not have been controlling in this district at the time of the alleged acts. Therefore, Defendants would be entitled to qualified immunity with respect to Mitchell's claims.

21

sentence.  The Court finds that a strip search in these situations does not violate an individual's constitutional rights.  Even as *Richerson* indicates, a strip search does not violate one's constitutional rights where the individual has been exposed to the public by attending a court hearing and returns to the jail.  958 F. Supp. at 306.  Gamble and Barber, having reported from the street to the FCCC to serve their sentences, present even more of a likelihood of transporting contraband or weapons into the general jail population than would a mere detainee who moves from the jail to a court hearing and back to the jail as in *Richerson*.[8] Therefore, the Court finds that Plaintiff Gamble's and Plaintiff Barber's strip searches did not violate their constitutional rights and, thus, that their claims must be dismissed.

Next, the Court will address those claims for which a ruling in favor of Defendants on the qualified immunity issue is not warranted, at least not at this point in the proceedings.  First, Plaintiff Black alleges that she was strip searched at FCCC after having been arrested and charged with contempt for failure to pay child support, taken into custody, and transported to the FCCC.

---

[8]Moreover, as Defendants point out, an inmate, such as Gamble or Barber, is not entitled to the same privacy rights as unincarcerated persons or even pretrial detainees. *Cf. Hudson v. Palmer*, 468 U.S. 517, 522-26 (1984)("[W]e hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.").

However, it is unclear from the complaint how much time, if any, expired between these three events, whether anything else occurred in between, and whether Black was an inmate or merely a pretrial detainee at the time of the strip search.  Regardless, the Court cannot conclude at this point, based solely on the allegations contained in the complaint, that Black can prove no set of facts consistent with the allegations that would entitle her to relief.  Thus, Plaintiff Black's claim satisfies the threshold inquiry, and Defendants are not entitled to a 12(b)(6) dismissal of her claims arising out of the initial strip search of her at the FCCC.[9]

The same is true of the remaining claims that the Court has not yet addressed.  Based on the allegations of the original complaint and the amended complaint, the remaining Plaintiffs were arrested and charged with minor, nonviolent offenses for which there would have been no reasonable suspicion that the Plaintiffs would transport contraband or weapons into the jail.  Despite that,

---

[9]The Court recognizes that under some circumstances it would be appropriate to find that, despite Plaintiff having alleged a constitutional violation, Defendants are entitled to qualified immunity.  However, this is not one such case.  Because the law at issue is clearly established and is directly on point with the allegations, *Masters*, 872 F.2d at 1255, if Defendants violated such law by strip searching Plaintiff in violation of *Masters*, then Defendants would not be entitled to qualified immunity.  *See Brosseau*, 125 S. Ct. at 599; *Lyons*, slip op. at 10.  Because the Court finds that there *is* a set of facts that Plaintiff Black could prove consistent with the allegations of the complaint that would entitle her to relief, and because such law is clearly established, Defendants are not at this point entitled to qualified immunity.

the complaints allege, the Plaintiffs were strip searched after arriving at FCCC.[10]   It is not entirely clear based on the allegations of the complaints when and under what circumstances all of the strip searches occurred.   However, because the complaints allege minor, nonviolent offenses and no reasonable suspicion of contraband or weapons, the Court cannot conclude at this point that the remaining Plaintiffs cannot recover under any set of facts consistent with their allegations.   *See Masters*, 872 F.2d at 1255.

**CONCLUSION**

Accordingly, **IT IS ORDERED**:

(1)   that Defendants' motion to dismiss Plaintiffs' original complaint [Record No. 12] be, and the same hereby is, **GRANTED IN PART and DENIED IN PART**;

(2)   that Defendants' motion to dismiss Plaintiffs' amended

---

[10]Specifically, the relevant Plaintiffs and the crimes with which they were charged are as follows:  Creech — driving under the influence; Jeffrey Curtis ("Curtis") — contempt of court for failure to pay fines and failure to attend classes; Angela Nesselrode ("Nesselrode") — contempt of court for failure to pay fines and failure to appear; Tommy Cummins ("Cummins") — contempt for failure to pay fines; Jillian Baker ("Baker") — contempt for failure to pay fines and failure to appear; Linda Epling ("Epling") — violation of probation for failure to maintain automobile insurance; Joe Farler ("Farler") — contempt of court and/or alcohol intoxication; Natalie Elizabeth McClease ("N. McClease") — unlawful transaction with a minor as a result of truancy; Tony Ray McClease ("T. McClease") — unlawful transaction with a minor as a result of truancy; Jonathan Cox ("Cox") — operating a motor vehicle on a suspended license; Cooper — contempt of court on underlying convictions of driving on a suspended license and driving under the influence; and Julie Ann Corn ("Corn") — misdemeanor theft by unlawful taking.

complaint [Record No. 21] be, and the same hereby is, **GRANTED IN PART and DENIED IN PART**;

(3) that Defendants' supplemental motion to dismiss [Record No. 30] be, and the same hereby is, **GRANTED IN PART and DENIED IN PART**;

(4) that all of Plaintiff Black's constitutional claims against Defendants — except her equal protection claims, which remain viable — to the extent they are based on the strip searches conducted upon Black following her return from work release, be, and the same hereby are, **DISMISSED WITH PREJUDICE**;

(5) that Plaintiffs Mitchell's, Wash's, Hagan's, Gamble's, Tillett's, S. McClease's, Lear's, Hammonds's, Barber's, Hunter's, and Tipton's claims against Defendants be, and the same hereby are, **DISMISSED WITH PREJUDICE**;

(6) that Plaintiff Cooper's claims against Defendants, to the extent they are based on the strip searches conducted upon Cooper following her return from court appearances be, and the same hereby are, **DISMISSED WITH PREJUDICE**;

(7) that the FCCC be, and the same hereby is, **DISMISSED WITH PREJUDICE** as a Defendant to this action;

(8) that the equal protection claims of all of the Plaintiffs *other than Plaintiff Black* be, and the same hereby are, **DISMISSED WITH PREJUDICE**; and

(9)  that all of the Plaintiffs' Ninth Amendment claims be, and the same hereby are, **DISMISSED WITH PREJUDICE.**

This the 16th day of August, 2005.



**Signed By:**

**_Joseph M. Hood_**

**United States District Judge**